# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

DAVID WILCOX and GLOBAL
PROCESSING, INC,

        Defendants.

No.  24-CR-3051-LTS-KEM

**MEMORANDUM OPINION
AND ORDER**

---

Defendant Global Processing, Inc., has not retained counsel in this criminal case. At the court's direction, the parties submitted briefing on how to proceed (Docs. 37-39). The Government also filed a response to an order to show cause regarding whether Defendant Global Processing, Inc. (GPI), has been properly served in this case (Doc. 45), to which Wilcox filed a reply (Doc. 48).   I conclude that Defendant Global Processing, Inc., may proceed without counsel, represented by its sole owner and corporate representative, Defendant David Wilcox, as long as Wilcox has been properly served on behalf of Global Processing.

## I.     BACKGROUND

The indictment in this case alleges that Global Processing operated as a grain dealer, purchasing soybeans from farmers on contract to sell abroad.  Doc. 4.  The indictment alleges that Global Processing was an "undercapitalized sham corporation and the alter ego of Defendant David Wilcox," its president and sole owner.  *Id.*  The indictment alleges that Global Processing failed to pay farmers for soybeans and doctored records to make it appear otherwise to regulators.  *Id.*  The indictment alleges that Wilcox took the money from the sale of the soybeans for himself.  *Id.*

Wilcox hired a law firm who filed for Chapter 11 bankruptcy on Global Processing's behalf in October 2022.[1] In October 2023, the bankruptcy court granted the United States Trustee's motion for the appointment of a Chapter 11 trustee.[2] The bankruptcy court found that Global Processing had been "poorly and perhaps even fraudulently managed" based on a "pattern and practice of poor record-keeping and missing funds [that] appear[] to go beyond 'human error.'"[3] The court further found Wilcox "systematically ignored best business practices, evaded state and federal oversight and regulations, disregarded the corporate form by enmeshing his personal funds with his business, and harmed grain producers of Iowa."[4] The court recognized that Global Processing had multiple outstanding contracts, however, that could bring significant funds into the estate.[5] Therefore, the court appointed a Chapter 11 trustee.[6] Wilcox appealed this decision on behalf of Global Processing, but the appeal was dismissed for lack of counsel; retained counsel's representation of Global Processing terminated upon appointment of the trustee, and Wilcox did not "hire an attorney with his own funds (separate from the bankruptcy estate) to pursue the appeals."[7] In January 2024, the bankruptcy court granted the trustee's motion to convert the case to Chapter 7 bankruptcy.[8] Since that time, the trustee has been liquidating Global Processing's assets

---

[1] *In re Global Processing, Inc.*, No. 22-00669, Doc. 1 (Bankr. N.D. Iowa Oct. 24, 2022).

[2] *Id.*, Doc. 406 (Oct. 6, 2023).

[3] *Id.*

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] *See In re Global Processing, Inc.*, No. 23-cv-3040-LTS-KEM, Doc. 12 (N.D. Iowa Jan. 30, 2024).

[8] *In re Global Processing, Inc.*, No. 22-00669, Doc. 12 (Bankr. N.D. Iowa Jan. 30, 2024).

and recovering monies owed to Global Processing in lawsuits. When the trustee took over, he explained to Wilcox that his employment with Global Processing was terminated and that he should not come onsite; that he "no longer ha[d] authority to take action or engage in discussions regarding the pending insurance claim or any other asset of the bankruptcy estate"; and that while he remained president, Global Processing was "no longer a debtor in possession, so [Wilcox did] not have control over the bankruptcy estate assets." Docs. 37-1, 37-2.

In November 2024, the grand jury returned the indictment in this case, charging Wilcox and Global Processing with bankruptcy fraud and making a false bankruptcy declaration. Doc. 4. The indictment alleges that Defendants defrauded farmers out of their crop, filed the bankruptcy petition to hide their fraud, and made false statements in the bankruptcy petition. *Id.*

The Government originally tried to serve the summons for Global Processing on the bankruptcy trustee, but he indicated he was not authorized to accept service for pre-bankruptcy criminal activity. The Government (through the United States Marshals Service) reached out to Wilcox via text message and asked for Wilcox to call (presumably about service). Doc. 46-3. Wilcox responded with the name of counsel's law firm and address, saying "This is our attorney in Iowa. We meet with him Friday. Send to him."[9] *Id.* A deputy marshal called the attorney, Raphael (Ray) Scheetz; it is unclear what was said during the phone conversation, but afterward, the deputy marshal sent an email to counsel with summonses for both Wilcox and Global Processing and said: "Please find the attached summons for Mr. David WILCOX. Thank you for taking the time to speak today and have a good rest of your week." Docs. 46-8, 46-9. Counsel responded, "Received – thank you." *Id.* Wilcox indicates that during two phone calls with a deputy marshal, no mention was made of Scheetz accepting service on behalf of Global

---

[9] A different firm represented Global Processing in the bankruptcy.

Processing. The Government filed executed returns for both Defendants on the docket, which indicated the summonses had been served on Scheetz as the authorized representative of Wilcox and Global Processing. Docs. 12-13.

The Government sent an email to Scheetz and the Federal Public Defender's Office, who had originally been appointed to represent Wilcox, stating: "I got returns of service on the summonses in this matter from [the Marshals Service], and [the Marshals Service] indicated Ray [Scheetz] accepted service on behalf of both defendants. We are getting discovery prepared – am I correct that the production will be going to Ray, and [the Federal Public Defender's Office] will be withdrawing and Ray appearing?" Doc. 46-7. Scheetz responded that he would "likely" be representing Wilcox but was waiting on payment of the retainer and that Wilcox said he did "not have the authority to hire an attorney for [Global Processing]—the bankruptcy trustee has that authority." *Id.*

At the initial appearance, Wilcox appeared personally with his retained attorney, Scheetz. Doc. 20. When the court suggested that no one was appearing on behalf of Global Processing, the Government indicated the summons was served and Wilcox was appearing on behalf of Global Processing as its registered agent. Wilcox's attorney responded that he represented only Wilcox and that the bankruptcy trustee had the exclusive authority over the corporation, including hiring counsel. The Government indicated there may be an issue of who would pay for counsel, but Wilcox was there for Global Processing because he had been served. The court proceeded with the initial appearance, reiterating that Wilcox had been served on behalf of Global Processing and that no counsel appeared. Wilcox's counsel stated he pleaded not guilty, and the court indicated it would also enter a plea of not guilty on Global Processing's behalf.[10] Neither

---

[10] *Cf.* **Fed. R. Crim. P. 11(a)(4)** ("If a defendant refuses to enter a plea or if a defendant organization fails to appear, the court must enter a plea of not guilty.").

the parties nor the court clarified or discussed further the issue of service on Global Processing.

When an attorney had not appeared for Global Processing after a month, the Government moved for a status conference. Doc. 29. After discussing the issue of counsel for Global Processing with the parties at the status conference, the court requested briefing, which the parties have now provided. Docs. 37-39. The Government argues that the corporation can proceed without counsel with Wilcox as its representative; that Wilcox has substantial assets to pay for counsel for Global Processing; that the bankruptcy estate has substantial assets to pay for counsel for Global Processing, which the court could obtain by partially withdrawing the reference to the bankruptcy proceeding; and that Global Processing has appeared through Wilcox, starting the speedy-trial clock (rendering a severance inappropriate). Doc. 38. Wilcox (through counsel) argues that a corporation may appear only through counsel; Wilcox is no longer an authorized agent of Global Processing based on the appointment of a Chapter 7 bankruptcy trustee; Wilcox cannot be ordered to pay for Global Processing's defense, as it would be an unconstitutional taking; requiring Wilcox's counsel to represent the corporation would violate ethical rules on conflict of interest; and counsel for Global Processing should be appointed and paid from the bankruptcy estate or else the case should be stayed. Docs. 37, 39.

The parties also consulted with the bankruptcy trustee, who explained:

My role as Trustee is to liquidate the property of the estate, review claims that can be brought on behalf of the estate, and to review claims filed against the estate's property. . . . I believe the confusion may stem from the distinction between [Global Processing] as an entity, and [Global Processing's] property rights. Upon filing of the bankruptcy petition, [Global Processing's] assets became property of the bankruptcy estate. . . . I would need to obtain [bankruptcy court] approval to retain counsel to represent the bankruptcy estate in the criminal proceeding, and as that matter concerns [Global Processing's and Wilcox's] pre-petition and their collective actions on behalf of [Global Processing] as a debtor-in-possession, I do not see any benefit to the estate in doing so. . . . Wilcox,

5

individually and as a corporate officer, is responsible to respond to those allegations. . . . [I]n the event there is any action taken in the criminal proceeding that would impact . . . property of the estate, as Trustee I would intervene at that point, as any action against property of the estate would need to be brought . . . in the bankruptcy proceeding.

Doc. 36. The bankruptcy trustee also indicated he had filed two lawsuits against Wilcox, alleging he improperly used Global Processing funds for his own personal benefit. *Id.* He suggested that bankruptcy funds were unnecessary to pay for a criminal attorney for Global Processing, as "Wilcox can likely fund such defense from the diverted [Global Processing] funds, which he continues to hold or have access to." *Id.*

At no point did counsel for Wilcox suggest that he had not accepted service on behalf of Global Processing (despite the return filed on the docket and the Government's email prior to the initial appearance, which reflect this understanding; as well as the court's statements at the initial appearance recognizing that Global Processing had been served (without explaining how)). In his reply brief on the issue of counsel (Doc. 39), Wilcox argues for the first time[11] that Global Processing has not been properly served. Scheetz explains that the Marshals Service did not mention accepting service for Global Processing, and that he believed the summons to Global Processing included in the email was merely a courtesy copy. Wilcox also points out in his reply (Doc. 48) that he was originally represented by the Federal Public Defender's Office in this matter, that the deputy marshal emailed the summons to Scheetz on December 4, 2024 (at Wilcox's direction), and that Scheetz was not retained by Wilcox until December 10, 2024. Wilcox states that Scheetz did not represent Global Processing, nor did Scheetz believe he had authority to accept service on behalf of Global Processing.

---

[11] Wilcox points to the Government's brief (Doc. 38) as being the first time the Government raised the issue of service by arguing that Wilcox had accepted service of the summons to Global Processing via email to Scheetz.

Wilcox does not dispute that he was properly served in his individual capacity. It appears that Wilcox's contentions regarding the validity of service on Global Processing may rest on an incorrect view of the bankruptcy trustee's role. Wilcox directed the Marshals Service to serve the summons (for himself and for Global Processing) on his attorney (Scheetz), who agreed to accept service for the individual defendant (but not the corporation). There is no question that Global Processing is aware of the case—Wilcox is the sole shareholder of Global Processing. The question is whether effective service was made on Global Processing.

## II.    SERVICE

The Federal Rules of Criminal Procedure provide that a summons may be served on a defendant organization by "delivering a copy to an officer, to a managing or general agent, or to another agent appointed or legally authorized to receive service of process."[12] Although Global Processing's assets are controlled by the bankruptcy trustee, Wilcox is still the principal of Global Processing, and the person to serve on its behalf.[13]

When the Marshals contacted Wilcox regarding serving him with process, he directed the Marshals to serve Scheetz, his lawyer. Scheetz agreed to accept service for Wilcox (he believed individually; the Marshals believed both individually and as the corporate representative for Global Processing). The Marshals Service emailed the summons for Global Processing to Scheetz. Wilcox was never personally served, nor did he or Scheetz specify that the summons for Global Processing (as opposed to the summons for Wilcox individually) should be served on Scheetz.

Because of the lack of clarity on the issue of Global Processing being served, the court finds the better course is to ensure a clean record of proper service. Accordingly,

---

[12] **Fed. R. Crim. P. 4(c)(3)(C)**.

[13] *See JNC Cos. v. Meehan*, 797 P.2d 1, 3-4 (Ariz. Ct. App. 1990).

the court will direct issuance of a new summons for Global Processing for the Government to serve on Wilcox. In the event Wilcox files written acknowledgment of proper service from the original summons, the new summons can be returned unexecuted. Otherwise, the Government must effectuate service, after which the court will schedule an initial appearance and arraignment for Global Processing.

## III. CRIMINAL CORPORATE DEFENDANT'S ABILITY TO PROCEED WITHOUT COUNSEL

The Sixth Amendment right to counsel applies to corporations. But because corporations do not face loss of liberty (unlike individuals facing criminal charges), most courts have held a corporation's Sixth Amendment rights are limited to the right to retain counsel of its choice, paid for with its own funds; an indigent corporation is not entitled to appointed counsel under the Sixth Amendment or Criminal Justice Act.[14] A corporation's Sixth Amendment rights may be violated, however, if it lacks funds to hire

---

[14] *United States v. Hartsell*, 127 F.3d 343, 350 (4th Cir. 1997); *United States v. Unimex, Inc.*, 991 F.2d 546, 549-50 (9th Cir. 1993); *United States v. Hum. Servs. Assocs., LLC*, 216 F. Supp. 3d 841, 848-49 (W.D. Mich. 2016); *United States v. Burk*, No. EP-14-CR-240, 2014 WL 2800759, at *4-5 (W.D. Tex. June 18, 2014); *United States v. JB Tax Pro. Servs., Inc.*, No. 13-127, 2013 WL 6004047, at *1 (E.D. La. Nov. 13, 2013); *United States v. Chaudary*, No. 12-20123, 2012 WL 5877414, at *2 (D. Kan. Oct. 30, 2012), *report and recommendation adopted,* Doc. 67 (Dec. 19, 2012); *United States v. Golden Heart in Home Care LLC*, No. 12-cr-00062, 2012 WL 3580194, at *3 (S.D.W. Va. Aug. 17, 2012); *United States v. Rocky Mountain Corp.*, 746 F. Supp. 2d 790, 800-01 (W.D. Va. 2010), *as amended* (Nov. 2, 2010), *aff'd,* 442 F. App'x 875 (4th Cir. 2011); *see also Scott v. Illinois,* 440 U.S. 367, 373-74 (1979) (holding that Sixth Amendment does not require the appointment of counsel for an individual criminal defendant not subject to imprisonment); *cf. Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 196 (1993) (holding that corporations are not "persons" who may proceed in forma pauperis under 28 U.S.C. § 1915); *but see United States v. Cocivera*, 104 F.3d 566, 571-73 (3d Cir. 1996) (recognizing Sixth Amendment right to effective counsel for organization and holding this right was violated by representation at trial by member/manager and individual defendant proceeding pro se). *Cocivera* relied on a prior Third Circuit case recognizing the right to effective assistance of counsel applied to corporations issued shortly after the Supreme Court's decision in *Scott v. Illinois*—*United States v. Rad-O-Lite of Philadelphia, Inc.*, 612 F.2d 740, 743 (3d Cir. 1979)—and neither *Cocivera* nor *Rad-O-Lite* addressed *Scott*.

counsel due to the Government's seizure of assets without a pretrial hearing.[15]

Outside the criminal context, a corporation may not proceed pro se.[16] In a civil case, the court can enforce this rule by dismissing the case (if the corporation is a plaintiff) or entering default (if the corporation is a defendant). But there is no analog to default judgment in a criminal case. In fact, the opposite is true: if a defendant fails to appear in a civil case, the plaintiff automatically "wins" through default; but if a defendant fails to appear in a criminal case, the Government cannot obtain judgment against it (which is a "win" for the corporate defendant).[17]

Some courts have held that the rule that a corporation cannot proceed pro se extends to criminal cases.[18] But this creates tension with the court's inability to appoint counsel under the Criminal Justice Act. As other courts have noted, it cannot be the rule that an organizational defendant can "stymie criminal prosecution by refusing to retain

---

[15] *Unimex*, 991 F.2d at 551.

[16] *Ackra Direct Mktg. Corp. v. Fingerhut Corp.*, 86 F.3d 852, 857 (8th Cir. 1996).

[17] *See* **Fed. R. Crim. P. 43** (a criminal defendant must be present at "the initial appearance, the initial arraignment, . . . the plea," trial, and sentencing, but a defendant "who was initially present at trial" may thereafter waive the right to be present at trial or sentencing); *see also Crosby v. United States*, 506 U.S. 255, 262 (1993) (reversing conviction of defendant tried in absentia after defendant absconded prior to trial and holding that Rule 43 requires the defendant's presence at the beginning of trial).

[18] *Cocivera*, 104 F.3d at 572 (citing civil cases); *United States v. Crosby*, 24 F.R.D. 15, 15 (S.D.N.Y. 1959) (same); *Chaudary*, 2012 WL 5876698, at *1 & n.2 (same); *Unimex*, 991 F.2d at 549 (citing civil case and district court's local rule); *Golden Heart*, 2012 WL 3580194, at *2 (same); *Hum. Servs. Assocs.*, 216 F. Supp. 3d at 850 (citing civil cases, *Unimex,* and *Acme Poultry Corp. v. United States*, 146 F.2d 738, 739-40 (4th Cir. 1944), which held that corporate officers did not need to be present at sentencing when the organization was represented by counsel, who was present); *see also Rowland*, 506 U.S. at 202-03 & n.5 (1993) (in a civil case, stating "that a corporation may appear in the federal courts only through licensed counsel," citing a string of civil cases, and suggesting that two cases to hold otherwise—one a bankruptcy case and one a foreclosure action—were wrongly decided); **Suneal Bedi,** *The Corporate Pro Se Litigant*, 82 Ohio St. L.J. 77, 81 & n.25, 85 & n.53 (2021) (stating that "[c]orporations . . . do not have a right to appear pro se in . . . criminal court" but citing only civil cases in support).

9

counsel."[19]  Thus, courts have recognized the "inherent power" to appoint counsel for a corporation.[20]  But there is still the issue of how to pay for counsel.

In *Crosby*, a case from 1959 (prior to the enactment of the Criminal Justice Act), the court ordered that the bankruptcy trustee appear for the corporate defendant in the criminal case, without discussing how counsel would be compensated.[21]  More recently, in cases in which the Government has seized the organizational defendant's assets, courts have appointed counsel (to avoid a potential Sixth Amendment violation) and ordered payment via the frozen assets,[22] or they have stayed the case pending the forfeiture proceedings (with the government ultimately dismissing the indictment against the corporation without prejudice due to lack of counsel).[23]  In *Rivera*, the court appointed counsel for three corporate defendants without assets, but noted they were "parts of an integrated group of more than fifty corporate entities" controlled by three siblings; the court ordered counsel be paid from the related entities' assets (under a freeze order), as well as ordering one of the siblings personally responsible for ensuring appointed counsel was paid (upon threat of being held in criminal contempt).[24]

Somewhat similarly, in *Coiteux*, the court indicated that if corporate defendants failed to retain counsel by a particular date, it would seek pro bono counsel but "authorize such appointed counsel to be paid out of corporate resources after notice to the individual

---

[19] ***United States v. Pace***, No. 98CR1247, 2000 WL 1059703, at *1 (S.D.N.Y. Aug. 2, 2000).

[20] *See, e.g.*, ***Crosby***, 24 F.R.D. at 16.

[21] ***Id.***

[22] *See **Hum. Servs. Assocs.***, 216 F. Supp. 3d at 852.

[23] ***Golden Heart***, 2012 WL 3580194, at *3; ***id.***, Doc. 120 (Oct. 22, 2012); ***Chaudary***, 2012 WL 5877414, at *3; ***id.***, Doc. 189 (June 19, 2015).

[24] ***United States v. Rivera***, 912 F. Supp. 634, 635 (D.P.R. 1996) (adopting report and recommendation).

defendants."[25] Later, however, the court issued an order indicating that the "pro bono panel [w]as . . . only available in civil cases" and it did "not itself have funding to appoint counsel"; therefore, the court recognized that while it "technically has discretion to appoint counsel, it may not have the functional ability to do so."[26] Ultimately, the corporation retained counsel.[27]

In *Burk*, the court ordered appointment of counsel for the insolvent corporation contingent on the government identifying "funds from which appointed counsel would be compensated in either the corporate treasury or in the treasury of the United States."[28] Ultimately, the government could not identify such funds, the court did not appoint counsel, and the case against the entity was dismissed.[29] The Ninth Circuit has held the court cannot order the government to pay for counsel.[30]

The court can appoint an attorney pro bono. This task is easy if there is a willing volunteer.[31] If there is not, the Eighth Circuit has held that a court may order an attorney to engage in pro bono representation without violating the attorney's rights under the Fifth Amendment Takings Clause or the Thirteenth Amendment's prohibition on involuntary servitude.[32] But the Eighth Circuit has suggested a court cannot order pro

---

[25] *United States v. Coiteux*, No. CR21-5184, 2022 WL 704223, at *2 (W.D. Wash. Mar. 9, 2022).

[26] *Id.*, Doc. 67 (Apr. 11, 2022).

[27] *Id.*, Doc. 70 (June 9, 2022).

[28] *Burk*, 2014 WL 2800759, at *16.

[29] *See United States v. Indep. Med. Servs., Inc.*, 804 F. App'x 787, 788 (9th Cir. 2020) (memorandum) (discussing aftermath in *Burk*).

[30] *Id.* at 788-89 (holding that district court's inherent authority did not include the ability to require the government to pay for counsel for organizational defendant).

[31] *See JB Tax Pro. Servs.*, 2013 WL 6004047, at *5.

[32] *Williamson v. Vardeman*, 674 F.2d 1211, 1213-15 (8th Cir. 1982); *see also Mallard v. U.S. Dist. Ct. for S. Dist. of Iowa*, 490 U.S. 296, 298, 310 (1989) (holding that statutory language

bono attorneys to bear litigation costs without violating their due process rights.[33]

Here, there are no seized assets from which to pay appointed counsel (or costs). The corporation has funds, but they are tied up in the bankruptcy estate, subject to trustee control. The Government suggests that the court should "withdraw the reference" from the bankruptcy court, but its cases do not show that the court could order counsel be compensated from the bankruptcy estate under bankruptcy law, even if it did withdraw the reference.[34] In any event, given the court's lack of bankruptcy expertise, the court would not take such action absent a formal motion and briefing from the trustee or a recommendation from the bankruptcy court.[35]

---

of 28 U.S.C. § 1915(d) did not authorize a federal court to "require an unwilling attorney to represent an indigent litigant in a civil case," but explicitly leaving open the question of whether court could do so under its inherent authority); *Naranjo v. Thompson*, 809 F.3d 793, 801 (5th Cir. 2015) ("[C]ourts . . . have inherent power to compel counsel to accept an uncompensated appointment.").

[33] *Williamson*, 674 F.2d at 1215.

[34] *See* **28 U.S.C. § 157(d)** ("The district court may withdraw, in whole or in part, any case or proceeding referred [to the bankruptcy court] under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce."); *United States v. DeMiro*, 446 B.R. 804, 807-08 (E.D. Mich. 2011) (holding that fraud victim's involuntary petition for bankruptcy relief against defendant, filed after defendant was indicted, was subject to mandatory withdrawal, since the criminal case sought forfeiture of the funds at issue prior to the bankruptcy petition, and victim's proper recourse was to "petition the district court for a hearing to adjudicate the validity of his alleged interest in the Forfeited Assets" (cleaned up)); *see also JNC Cos.*, 797 P.2d at 3-4 (noting some courts have held the court may "appoint counsel to represent the debtor in a criminal proceeding where the debtor is requesting such appointment and demonstrates that the representation will be beneficial to the estate," but others have held "appointment of counsel to defend debtor against indictment and use of estate funds to pay counsel do not relate to duties under the Code and are not authorized under [bankruptcy law]").

[35] *See, e.g.*, *DeMiro*, 446 B.R at 805 (noting court received briefing from the trustee in opposition to the government's motion to withdraw the reference).

It appears that the individual Defendant, Wilcox, the sole owner of Global Processing, has funds with which to hire counsel for the corporation—and he has retained counsel for himself. The court could perhaps order Wilcox to hire counsel for Global Processing. The court could also appoint an attorney pro bono, but there would still be the issue of how to pay for costs. And ultimately, the court finds an attorney unnecessary if Wilcox and Global Processing choose not to have one.

The Federal Rules of Criminal Procedure provide that a summons may be served on a defendant organization by "delivering a copy to an officer, to a managing or general agent, or to another agent appointed or legally authorized to receive service of process."[36] Wilcox is still an officer and managing agent of Global Processing for purposes of service, despite the appointment of a bankruptcy trustee. As one court explained:

> When a bankruptcy proceeding is commenced, all corporate property passes to the bankruptcy estate and the estate is represented by the trustee. The trustee is accountable for that property and has the duty to maximize the estate. The trustee must investigate the debtor's financial affairs, and may sue the officers, directors and other insiders on behalf of the estate to recover fraudulent or preferential transfers of the debtor's property. Clearly, the trustee has broad powers in dealing with matters that relate to the estate, including the power to actively litigate matters outside bankruptcy court which have an impact upon the estate. . . .
>
> The estate created by the filing of a bankruptcy petition "is an entity distinct from the debtor." Not everything that belongs to the debtor becomes part of the bankruptcy estate over which the trustee has control. "The estate generally includes all legal or equitable interests of the debtor in property as of the commencement of the case." We find nothing in the bankruptcy code or case law to support the conclusion that once a bankruptcy proceeding is commenced, the debtor's constitutional rights pass through to the estate along with the property and property rights that are traditionally considered part of the estate. "The trustee has standing only to represent the interests of the estate." . . . The Code does not purport to designate the trustee as the representative of the debtor. . . . . [Accordingly, bankruptcy law] does not authorize the bankruptcy trustee to compel the

---

[36] **Fed. R. Crim. P. 4(c)(3)(C)**.

> debtor to be represented in a criminal prosecution by counsel of the trustee's choosing over the debtor's objection . . . . [T]he right to counsel . . . under the Sixth Amendment . . . remain[s] inviolate notwithstanding the fact that a defendant is also [a] debtor in a bankruptcy proceeding.[37]

Thus, Wilcox can be served, hire counsel, and appear on behalf of Global Processing, even though its assets are controlled by a bankruptcy trustee.

The Federal Rules of Criminal Procedure make clear that an individual agent of the corporation can be served with summons for the criminal case. They do not specifically state that an individual agent may appear on behalf of the corporation. Rule 43(a) requires the defendant's presence at certain stages, but under Rule 43(b)(1), a defendant's presence is not required when "[t]he defendant is an organization represented by counsel who is present." I read this rule as stating that the corporate representative need not be present when the corporation's attorney is present (or in other words, that the corporation may appear through counsel),[38] *not* that the corporation may appear *only* through counsel. It would not make sense to allow service via the corporate representative, but then require appearance only through counsel, essentially allowing the corporation to evade the criminal charges by refusing to hire counsel (as demonstrated by some of the cases discussed above). The lack of a "stick" to enforce a counsel requirement (such as default judgment) distinguishes the criminal trial context from the civil context.

There are courts that have allowed an organizational defendant to appear through its representative (without counsel) in a criminal case. In *Hartsell*, the Fourth Circuit upheld an organization's jury conviction against its argument that the trial court must provide counsel "to a corporation that cannot afford to secure counsel for itself when it faces criminal charges," suggesting that the organization proceeded without counsel in

---

[37] *JNC Companies*, 797 P.2d at 3-4, 6 (citations omitted) (quoting 8A **C.J.S.** *Bankruptcy* §§ 28, 105 (1988)).

[38] *See, e.g.*, **Acme Poultry**, 146 F.2d at 739-40.

the trial court.[39]  In *Pace*, the district court refused to quash a summons on the former president of the dissolved organizational defendant, holding that the organizational defendant must appear through its corporate representative (and be present for the first day of trial) unless it hired counsel.[40]  And in *Holy Land*, the court upheld a conviction against a corporation who proceeded to trial without an attorney, after retained counsel withdrew from representing the corporation but not the individual defendants.[41]  The court noted the organization "could not and did not operate independently from" the individual defendants, who "directed and controlled [the organization]" and who created the corporation to carry out their agenda.[42]  The court held that because the corporation was the alter ego of the defendants, "there [wa]s no practical distinction between the legal defense of [the individual defendants] and the defense of [the corporation]."[43]  Therefore, the court held "the unrepresented corporation was 'de facto' represented by its officers' and directors' counsel during trial."[44]

In addition, this court has previously allowed an indigent corporation to proceed via pro se representation by a corporate officer.[45]  In *United States v. Energae, LP*, two organizations were indicted on fraud charges.  The manager of the organizations had previously been indicted on fraud charges, and the organizations had been placed into a

---

[39] *Hartsell*, 127 F.3d at 349-50.

[40] *See Pace*, 2000 WL 1059703, at *1.

[41] *United States v. Holy Land Found. for Relief & Dev.*, No. 04-CR-0240-P, 2010 WL 11541819, at *7 (N.D. Tex. May 24, 2010).

[42] *Id.* at *8.

[43] *Id.*

[44] *Id.* at *9.

[45] *See United States v. Energae, LP*, No. 20-CR-2007, Docs. 42-44 (N.D. Iowa March 3, 24, 26, 2021).

receivership. Originally, receivership counsel appeared for the organizations. But when the receivership ended, counsel sought leave to withdraw, which was granted. Ultimately, the court allowed the manager of the organizations to plead guilty on their behalf, making factual findings during the plea colloquy to confirm he was the de facto corporate officer for the organizations. The district court later questioned the corporate officer's ability to file pro se objections to the presentence investigation report (citing caselaw on a corporation's ability to proceed pro se in the civil context), but ultimately found "the prudent course [was] to allow, rather than to strike, the objections."[46] The court ultimately sentenced the organizational defendants with the corporate representative present.[47] The corporate representative filed a pro se notice of appeal.[48] On appeal, the Eighth Circuit held that the corporate representative could not represent the organizations pro se, as "a corporation may not appear on appeal unless it appears through counsel."[49] The appeal was ultimately dismissed for failure to prosecute based on lack of counsel. That the Eighth Circuit held the corporation could not proceed pro se on appeal does not establish that a corporation cannot proceed pro se in the district court. On appeal, there is a remedy akin to civil cases for the failure to obtain counsel that did not punish the government (dismissal), unlike in the underlying criminal case.

Here, Global Processing is not indigent (its assets are controlled by the bankruptcy trustee as part of action it voluntarily took—filing for bankruptcy). It is a closely held corporation owned and controlled by one person, Wilcox, and alleged to be used as his

---

[46] *Id.*, Doc. 44 (March 26, 2021).

[47] *Id.*, Doc. 142 (Sept. 21, 2022).

[48] *Id.*, Doc. 152 (Oct. 3, 2022).

[49] *Energae, LP v. United States*, No. 24-1247 (8th Cir. Feb. 14, 2024).

alter ego.[50]  If neither Wilcox nor the bankruptcy trustee want to spend funds to pay for counsel, the court will not force them to (especially as the court's authority to do so is dubious).  Assuming Wilcox has been served, Global Processing will appear and be represented by Wilcox, its corporate representative.  Wilcox may engage in plea negotiations and represent the corporation's interest in any manner he deems appropriate (including by hiring counsel).  If Wilcox chooses not to hire counsel or put on a separate defense for Global Processing, that is his choice.  In essence, the case can proceed as it has been, with the understanding that when Wilcox is present, so is Global Processing for purposes of Rule 43.

## IV.    CONCLUSION

The Clerk of Court will issue a new summons for Global Processing.  By April 15, 2025, confirmation of service must be filed (either by Global Processing filing written acknowledgment of receipt of the original summons, or the Government filing a return of service).

Once service on Global Processing has been confirmed, Global Processing will appear through its corporate representative, David Wilcox, unless Wilcox retains counsel for Global Processing.

If a return of service is filed on the newly issued summons, the court will schedule an initial appearance hearing for Defendant Global Processing, Inc.

**SO ORDERED** on March 31, 2025.

Kelly K.E. Mahoney
Chief Magistrate Judge
Northern District of Iowa

---

[50] Wilcox disputes that the corporation is his alter ego, but it is undisputed that he is the sole owner.